LOTTINGER, Judge.
This is a workmen’s compensation suit filed by Mrs. Jean P. Miller, plaintiff-appellant. The Lower Court rendered judgment dismissing the suit against defendant, Amos Cutrer, d/b/a Amos Floor Covering, on finding that plaintiff failed to sustain the burden of proof required to establish that her injuries were job connected. Plaintiff-appellant filed this devolutive appeal.
The appellant urges that the trial court committed manifest error in accepting ap-pellee’s version of the facts and not finding that appellant proved by a preponderance of the evidence that her injury and resulting disability were job connected.
Plaintiff-appellant, Mrs. Jean P. Miller was employed as a seamstress at defendant-appellee’s place of business, known as Amos Floor Covering at Kentwood, said employment encompassing the date of May 17, 1971. Plaintiff alleges that on or about May 17, 1971, she fell from a chair onto the floor at her place of employment while carrying out the activities of her employment, injurying her hip and lower back. Basically, appellant’s testimony was to the effect that she arrived at work on the morning of May 17, 1971, and was requested by Mr. Cutrer to dust off the light fixtures above the machines in the workroom of their shop. She further testified that shortly thereafter, she began to do just that and when she finished dusting the light fixture over the surger, one of the shop machines, she went to step from the top of the surger, where she had been standing to dust, onto a chair. As she stepped onto the chair she fell landing on her back and causing immediate pain and disability to her lower back and left leg.
There was no eye witness to the alleged accident. However, Mrs. Cutrer, the wife of appellee, and a friend of the Cutrers, Rev. J. Vernon Fairley, minister of the Kentwood United Methodist Church and the Mount Herman United Methodist Church, were in an adjoining room and both testified that they heard scissors fall to the floor. They both ran into the room and found the plaintiff on her back on the *884 floor. Mrs. Cutrer requested that Rev. Fairley call her personal doctor, Dr. Carlton Faller, requesting that he give immediate aid to her employee. Appellant was then taken by Rev. Fairley to appellee’s physician at the Pike-Faller Clinic where she was admitted for treatment.
Mrs. Cutrer stated that she did not know how appellant was injured, but that appellant must have received her injury prior to reporting for work. We quote a portion of her testimony:
“Q. Mrs. Cutrer, I believe you testified that you talked with Mrs. Miller and she had an Ace bandage on her leg, is that correct, now what date was that? Was that the date she allegedly fell?
A. That was on the Friday before Monday.
Q. That was the Friday before the alleged accident?
A. Right. And she told me that she had stepped in a hole in her yard and had twisted her leg, and she tried to get a doctor, she said, that afternoon and she couldn’t get one to come to the hospital.
Q. Was she wearing that bandage when she got off from work that day?
A. On Friday?
Q. Yes.
A. Yes, she was. Now, I did not see her again until Monday morning but she was still limping Monday morning.”
The defendant, Mr. Cutrer, testified on cross-examination as follows:
“Q. Mr. Cutrer, did you see Mrs. Miller the Friday before the Monday that this happened?
A. Yes, I did.
Q. Was she limping?
A. Yes, she was.

“Q. Did you ask her what was the matter with her ?
A. No, I didn’t, but over the week end my wife told me that she had asked her.
Q. Well, she just testified.
A. And that’s the reason that I had told Mrs. Miller the Monday morning that when she felt like it and didn’t have anything else to do she could clean the bulbs because I didn’t want . . . particularly want her to do it that day, not necessarily, because I knew she had been injured.”
The testimony of Rev. J. Vernon Fair-ley, who was the only person in appellee’s shop other than appellee’s wife and the appellant at the time of the alleged accident, does not enlighten the court as to whether the appellant was actually injured on the job. A portion of his testimony follows:
“Q. Did anything unusual occur on that day?
A. Yes. Mrs. Cutrer and I were talking in the office and while we were talking in the office we heard or I heard, in the other room where Mrs. Miller was at the time, I heard some scissors hit the floor. I remember it very vividly because I thought she had cut herself and I got up and, of course, Mrs. Cutrer did, too, but I got up to go and see what had happened and when I arrived in the room Mrs. Miller was stretched out on the floor and I went and called the doctor. This was the first thing that I did. I also, after I heard the scissors fall, heard Mrs. Miller say ‘Mary Jo’, this is all that I heard. I went and called Dr. Faller and Mrs. Cutrer stayed with Mrs. Miller while I went and called Dr. *885 Faller. Dr. Faller said that we would have to get her to the hospital for him to treat her. Therefore, I went hack into the room where Mrs. Miller was and Mrs. Cutrer and we extended our arms to her, something like this, and she pulled up on our arms and sat down in the chair for a moment and then she said she felt like that, with our help, she could walk and so we helped her and she held on, similar to what she said, one of us was on one side and one on the other, I don’t remember who was on which side, and we went out to my car which was parked in the front and I took Mrs. Miller to the hospital, got a nurse to help in assisting her into the hospital, and this is what happened.
Q. You first stated that you heard something hit the floor, is that correct?
A. That is correct. I heard scissors hit the floor.
Q. You heard scissors hit the floor?
A. Yes.
Q. Now, approximately how far were you away from where Mrs. Miller was at that time ?
A. Well, I have no idea, I mean, it wasn’t far. I have no idea how far it was, in feet.
Q. Did you hear anything else hit the floor ?
A. No. I heard the scissors hit the floor and I heard her say ‘Mary Jo’, this was all that I heard.
Q. Now, upon entering the room, did you observe a chair that was overturned ?
A. If there was a chair overturned in that room, I did not see it.
Q. Where was Mrs. Miller and what position was she in when you first entered the room ?
A. You mean what position she was in?
Q. Yes sir.
A. She was laying flat on the floor. Her feet were up under whatever this machine was that she was on top of cleaning off the light.”
In summary, the appellant testified she received back injuries when she fell from a chair while dusting in the shop of Amos Floor Covering. Appellee’s wife who was in an adjoining room testified and maintained that the appellant injured herself at home a few days prior to the incident alleged by appellant. Appellee testified that plaintiff was limping on the Friday prior to Monday she was to have fallen at his place of business. Rev. Fairley, who was with Mrs. Cutrer in the adjoining room, was unable to confirm the appellant’s version of what happened.
It is evident that the Lower Court was faced with conflicting versions of what happened and was unable to reconcile the testimony before it. It therefore found that plaintiff-appellant failed to sustain the necessary burden of proof in establishing her injuries on the job. Upon a study of the entire record in this matter, we likewise find that plaintiff has not proven her case by a preponderance of the evidence. Consequently, we do not find the trial court in error.
For the reasons hereinabove assigned the Judgment of the Lower Court will be affirmed, all costs of this appeal are to be paid by plaintiff-appellant.
Judgment affirmed.